UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENDALL J. HINSHAW,

        Plaintiff,

v.                                         CASE No. 8:11-CV-465-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

_____

O R D E R

        The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.*   Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

I.

        The plaintiff, who was forty-eight years old at the time of the most recent administrative hearing and who has a college education, has

_____

        *The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 11).

worked as a customer service clerk, assistant store manager, sales clerk, secretary, administrative assistant, office manager, fast-food worker, and accounting clerk (Tr. 864, 888-89). She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled on February 26, 2001, due to fibromyalgia, osteoarthritis, severe depression, reflex sympathetic dystrophy, lumbar spine compression fractures, vertigo, migraine headaches, heel spur, and irritable bowel syndrome (Tr. 49-51, 58). The claims were denied initially and upon reconsideration.

At the plaintiff's request, a hearing was scheduled before an administrative law judge. The law judge subsequently rendered a decision, finding that the plaintiff was not disabled (Tr. 15-23). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

The plaintiff appealed the decision to this court. Upon the Commissioner's own motion, the court remanded the case to the Commissioner pursuant to sentence four of 42 U.S.C. 405(g). Hinshaw v. Commissioner of Social Security, No. 8:06-CV-779-T-TGW (M.D. Fla. Jan.

5, 2007) (Doc. 12). In particular, the court directed the Commissioner (id., p.

2):

> (1) to reevaluate the Veterans Affairs statement that
> the plaintiff is not able to work; (2) to reevaluate the
> plaintiff's alleged history of reflex sympathetic
> dystrophy and the potential effect of this impairment
> on her residual functional capacity; (3) to request
> updated records from the plaintiff's medical sources
> and order a new consultative examination in order to
> assess plaintiff's current medical condition,
> including plaintiff's possible reflex sympathetic
> dystrophy; and (4) if necessary, to grant the plaintiff
> a new hearing with vocational expert testimony.

The Appeals Council then vacated the final decision of the Commissioner and

remanded the matter to the law judge for further proceedings consistent with

this court's Order (Tr. 589-90).

Upon remand, the plaintiff received a de novo hearing before the

same law judge.   The law judge found that the plaintiff had severe

impairments of "history of lumbar compression fracture, history of reflex

sympathetic dystrophy of the right upper extremity, history of carpal tunnel

syndrome, history of vertigo, history of irritable colon syndrome,

fibromyalgia, osteoarthritis, possible rheumatoid arthritis, left shoulder

impingement syndrome, right tarsal tunnel syndrome, hypertension,

hypothyroidism, gastroesophageal reflux disease, headaches, obesity, depression, and post traumatic stress disorder" (Tr. 564). He concluded that, with these impairments, the plaintiff was limited to sedentary work with the following restrictions: "a frequent limitation for lifting above shoulder height and completing tasks requiring constant pushing and pulling with the left upper extremity, but capable of performing routine tasks in an environment where a sit/stand option is authorized" (id.). The law judge decided that these limitations prevented the plaintiff from returning to her past relevant work (Tr. 571). However, based upon the testimony of a vocational expert, the law judge found that there are jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as charge account clerk, surveillance system monitor, and scheduler (Tr. 572-73). The law judge therefore ruled that the plaintiff was not disabled (Tr. 573). The Appeals Council, after commenting upon arguments made by the plaintiff challenging the decision of the law judge, let the decision stand as the final decision of the Commissioner (Tr. 546-47).

II.

In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on two grounds. First, the plaintiff asserts that the law judge's credibility determination was not supported by substantial evidence. Second, the plaintiff contends that the law judge improperly evaluated opinions of the plaintiff's treating physicians. Neither of these contentions warrants reversal.

As indicated, the plaintiff first argues that the law judge erred by failing to find the plaintiff fully credible (Doc. 15, pp. 19-22). The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. <u>Dyer</u> v. <u>Barnhart</u>, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in <u>Landry</u> v. <u>Heckler</u>, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce

disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 564). He even cited Landry v. Heckler (id.). This demonstrates that the law judge applied the proper standards. See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In his credibility finding, the law judge did not wholly discount the plaintiff's subjective complaints of pain and limitations, but rather accepted that the plaintiff was limited to a great extent. The law judge discussed the plaintiff's testimony in his decision, and he specifically referred to the plaintiff's complaints regarding fibromyalgia, osteoarthritis, reflex sympathetic dystrophy, lumbar compression fracture, vertigo, migraine headaches, heel spurs, tarsal tunnel syndrome, irritable bowel syndrome, and depression (Tr. 565). The law judge also noted that the plaintiff alleged that she "experienced pain all over her body" and that "her medications were not

-8-

very effective and caused adverse side effects" (id.).  After considering the

plaintiff's statements, along with the medical and non-medical evidence, the

law judge limited the plaintiff to sedentary work with a sit/stand option (Tr.

564). He also included limitations for lifting above the shoulders and pushing

and pulling (id.).

In his credibility determination, the law judge gave an

explanation for declining to credit fully the plaintiff's subjective complaints

of pain.  Specifically, the law judge stated (Tr. 564-65):

> The evidence does establish the presence of
> underlying impairments that reasonably could be
> expected to produce the symptoms alleged.
> However, the claimant's statements as to the
> frequency, intensity, and duration of symptoms are
> inconsistent with the evidence of record and cannot
> be fully credited.  The objective medical evidence
> does not confirm the severity of the alleged pain,
> nor does the weight of the medical and non-medical
> evidence demonstrate the presence of an
> impairment that reasonably could be expected to
> produce pain and functional limitation to the degree
> alleged by the claimant.

After discussing the medical and non-medical evidence of record, the law

judge further stated (Tr. 570-71) (emphasis in original):

> Weighing against the claimant's credibility in this
> case are multiple additional factors.  There were

large gaps in the treatment record, despite the fact that the claimant had access to VA medical care. Treatment records for the period prior to the alleged onset date do not support any physical or mental limitations. The claimant alleged that she fell in her home in 2006 and suffered serious injury, yet she apparently never mentioned this accident to any health care providers until late 2007. Training was offered by the occupational therapy department,but the claimant declined. The objective evidence does not support any limitation of right upper extremity function. RSD was not considered a dominant problem and examination showed good strength and normal range of motion. MRI of the left shoulder showed only tendinopathy and possible small rotator cuff tear, elbow motion was normal, and grasp strength was good. The shoulder limitation of motion was taken into account in the residual functional capacity allowing for lifting of at most 10 pounds, frequent limitation for reaching above shoulder level, and frequent limitation for pushing and pulling with the left upper extremity.

The claimant alleged difficulty walking and a need for a cane, walker, or electric cart. However, the claimant was noted on examination to be able to walk with a normal gait, get up and down from a seated position, and get on and off the examining table without assistance. There was no neurological deficit, muscle atrophy, or joint instability noted, nothing to support that the claimant was unable to walk/stand for up to 2 hours and sit for up to 6 hours in an 8-hour workday, alternating position at will. There was no evidence of severe fatigue or weakness or abnormal neurological or cardiovascular findings, nothing to support that the claimant had to lie down

or elevate her legs for several hours per day. The claimant asserted that she required multiple unscheduled bathroom breaks due to symptoms of irritable bowel syndrome. However, the medical records do not even mention such symptoms after February 2000.

The claimant's mental health complaints also were not consistent. She asserted post traumatic stress due to sexual assault only for a short period of time and refused group therapy for PTSD. The claimant then refused all mental health treatment for an extended period of time and took herself off all psychotropic medications.

The law judge then noted that the VA assessed the plaintiff with only a 20% disability rating (Tr. 571). This explanation is sufficient to discount the plaintiff's complaints of incapacitating pain. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006).

The focus of the plaintiff's challenge to the credibility determination is her subjective complaints concerning her fibromyalgia. The law judge recognized that the plaintiff suffers from fibromyalgia and that the condition was a severe impairment. "Fibromyalgia is a condition characterized by widespread pain in joints, muscles, tendons and soft tissues." Id. at 695 n.1. The Eleventh Circuit has noted that the hallmark of fibromyalgia is a lack of objective evidence. Moore v. Barnhart, 405 F.3d

1208, 1211 (11ᵗʰ Cir. 2005).  As explained in <u>Sarchet</u> v. <u>Chater</u>, 78 F.3d 305,

306 (7ᵗʰ Cir. 1996):

> Its cause or causes are unknown, there is no cure,
> and, of greatest importance to disability law, its
> symptoms are entirely subjective.  There are no
> laboratory tests for the presence or severity of
> fibromyalgia. The principal symptoms are "pain all
> over," fatigue, disturbed sleep, stiffness, and – the
> only symptom that discriminates between it and
> other diseases of a rheumatic character – multiple
> tender spots, more precisely 18 fixed locations on the
> body (and the rule of thumb is that the patient must
> have at least 11 of them to be diagnosed as having
> fibromyalgia) that when pressed firmly cause the
> patient to flinch.

The court added that "[s]ome people may have such a severe case of

fibromyalgia as to be totally disabled from working ..., but most do not." <u>Id.</u>

at 307.

   In this case, the plaintiff apparently was diagnosed with

fibromyalgia in 1994.   Nevertheless, she worked for at least six years

thereafter.

   Furthermore, the law judge specifically considered the plaintiff's

fibromyalgia, along with her other impairments, and determined that it was

not totally disabling.  Thus, he stated (Tr. 568):

> The objective evidence shows that the claimant showed relatively persistent findings related to fibromyalgia, osteoarthritis, and left shoulder impingement, including trigger points, radiological evidence of degenerative joint changes in the shoulder and knee, and crepitus and limitation of motion in the shoulder and knee, as well as persistent findings of obesity. However, many reports of examination revealed no significant abnormalities; the claimant was repeatedly shown to demonstrate normal gait, no instability of any joint, and no neurological deficit; nerve conduction studies were negative for both upper and lower extremities; and not until late 2007 and early 2008 did the claimant show signs of mild synovitis. The claimant was treated with medication, steroid injections, and physical and occupational therapy and she reported a noticeable improvement following therapy.

He also pointed out (Tr. 569):

> On consultative examination in April 2008, the claimant was noted to enter without a cane and she was ambulatory; she appeared to walk with a normal gait and was able to get up and down from a seated position and on and off the examining table without help. The claimant complained of generalized symptoms involving virtually all systems, but the physician found no neurological deficit, no obvious muscle wasting or atrophy, and no swelling or instability of any joint (Exhibit 17F).

The law judge added (id.):

The non-medical evidence shows that, during the relevant time period, the claimant reported being able to cook simple meals, shop, drive, do household chores, manage her own money, get along well with others, and maintain adequate memory and concentration skills (Exhibit 5E). There were indications in the record that the claimant was able to care for an elderly parent (Exhibit 15F).    The claimant reported to her occupational therapist in December 2007 that she lived alone and was responsible for all household management and, in May 2008 reported that she liked to play Wii (Exhibit[s] 16F, 18F).    These activities are not inconsistent with the performance of routine, sedentary exertional level work tasks. Thus, the claimant's allegations of inability to do any work activity, and her father's reports and testimony, are found to be not fully credible.

The plaintiff states that "[t]he Appeals Council in this case specifically found that three of the ALJ's factual findings were not correct: the ALJ's findings of gaps in the medical treatment, the ALJ's finding that [the plaintiff] attended only one out of 6 physical therapy sessions, and the ALJ's finding that [the plaintiff] had declined training offered by occupational therapy" (Doc. 15, p. 19). Thus, the plaintiff asserts that the law judge's credibility determination should not stand because "the three main reasons given by the ALJ [were] found to be factually inaccurate" (id.).

In the first place, as the preceding quotations show, these are not

the main reasons for the law judge's credibility determination. In all events,

the Appeals Council supplemented the credibility finding and tightened it.

The plaintiff has not made any contention that the Appeals Council's addition

to the credibility determination should not be considered in evaluating the

final decision of the Commissioner.

The Appeals Council concluded that the factual inaccuracies did

not provide a basis for overturning the law judge's credibility determination

(Tr. 546-49). In this regard, the Appeals Council stated (Tr. 546-47):

> [Y]ou point out that the hearing decision contains
> references to several gaps in medical treatment,
> ranging from November 1994 to November 1998,
> 2004 to 2007 and, with respect to psychological
> records, 2004 to 2008. It was correctly stated in
> your letter that the earlier gap was irrelevant because
> it pre-dated the alleged onset of February 26, 2001.
> You as well correctly note that the more recent
> missing records were made available after the
> hearing and referred to in the decision.... We
> observe, however, that the Administrative Law Judge
> acknowledged on page 10 of the decision that the
> earlier gap pre-dated the period at issue, which
> establishes that this evidence was considered to
> obtain a longitudinal picture of the claimant's
> impairments as stated on page 8. Moreover, as you
> pointed out, the missing evidence connected with the

later alleged gaps was eventually obtained and considered.

You further contend that the Administrative Law Judge misinterpreted evidence, indicating ... that the claimant attended only one of six physical therapy sessions (see Exhibit 16F/page 11), when the record confirms a total of four (per Exhibit 16F/page 9). While the Council concurs with this observation, it is nonetheless pointed out that the record confirms that the treatment in question resulted in "noticeable improvement" of shoulder pain (see Exhibit 16F/page 9) and that the claimant continued to decline surgical intervention (Exhibit 18F/page 19). Reference was also made to the Administrative Law Judge's claimant declined ("AE") treatment, which was offered by her occupational therapist.... You correctly observe, however, that the evidence in Exhibit 16F/page 25 actually reflects that shoulder treatment was declined because of [the plaintiff's] inability to walk down to prosthetics without assistance. It was then noted that "OT will order AE and provide training on her next visit" (Exhibit 16F/page 25). Still, as indicated in the analysis on pages 8 through 11 of the decision, the overall evidence of record shows that the claimant's shoulder impairment is not disabling and accommodated by the nonexertional, upper extremity limitations cited in Finding 5.

For these reasons, as the Appeals Council determined, the errors identified by the plaintiff are not particularly significant and do not warrant reversal. It is appropriate to add that the gap in the medical records from 1994 to 1998 is

not entirely irrelevant since not only does it provide part of the longitudinal picture of the plaintiff's condition, but it covers a period when the plaintiff was diagnosed with fibromyalgia and was working.

The plaintiff also asserts other criticisms of the law judge's credibility determination. Thus, the plaintiff argues that the law judge erred by relying on the findings by Dr. James D. Melton, Jr., after an April 2008 consultative examination, that she "walked with a normal gait, without a cane, and with no neurological defect, muscle wasting or atrophy and no swelling or instability of any joint," because these symptoms do not relate to the plaintiff's fibromyalgia (Doc. 15, p. 20). This contention is unpersuasive. The law judge could reasonably conclude that the findings contradict the plaintiff's allegations of total incapacitation whether based on fibromyalgia or other impairments.

The plaintiff also challenges the law judge's consideration of the plaintiff's activities. The law judge noted that the plaintiff could "cook simple meals, shop, drive, do household chores, manage her own money, get along well with others, and maintain adequate memory and concentration skills" (Tr. 569). During the relevant period, the plaintiff also served as a caregiver

for her elderly father, who had Parkinson's disease (Tr. 480-81, 845). The law judge further noted that the plaintiff reported playing Wii games (Tr. 569). The medical records also reflect other activities that are inconsistent with total disability: lifting boxes during a garage sale and spending a lot of time on the computer (Tr. 372); part-time employment over a Christmas period (Tr. 394), a job which the plaintiff testified involved 20 hours per week (Tr. 865); rearranging her furniture (Tr. 441); and assisting her father with packing and organizing his belongings (Tr. 443). Thus, the plaintiff's activities support the law judge's determination that the plaintiff's allegations are not fully credible. See 20 C.F.R. 404.1529(c)(3), 416.929(c)(3); Moore v. Barnhart, supra, 405 F.3d at 1212 (upholding a credibility determination where the law judge "relied on the inconsistencies between [the plaintiff's] descriptions of her diverse daily activities and her claims of infirmity").

The plaintiff next contends that her Global Assessment of Functioning ("GAF") scores have no bearing on her credibility regarding her pain and limitations from fibromyalgia (Doc. 15, p. 21). As the Commissioner notes, the plaintiff alleged that, in addition to her physical impairments, her mental condition supported a finding of disability (Doc. 16,

p. 10 n.2). The law judge, therefore, could properly consider the plaintiff's GAF scores and other mental records in assessing the plaintiff's credibility. Moreover, a conclusion that the plaintiff was exaggerating her limitations from mental impairments could reasonably be considered in evaluating the plaintiff's overall credibility.

Finally, the plaintiff takes issue with the law judge's reference to her 20% disability rating from the VA, arguing that this rating is unrelated to her credibility (Doc. 15, p. 21). It was clearly appropriate for the law judge to note that rating. While the rating does not meaningfully undercut the plaintiff's allegations, it does not support them either. It does not appear that the law judge gave this factor any significant weight.

In sum, the credibility determination of the Commissioner, that is, the finding by the law judge as supplemented by the Appeals Council, is reasonable and adequately explained. The responsibility for making credibility determinations is reposed in the Commissioner and his determination is entitled to deference. Accordingly, to overturn the Commissioner's credibility finding, the plaintiff must show that the evidence

compels the contrary finding. <u>Adefemi</u> v. <u>Ashcroft, supra</u>. The plaintiff's criticisms of the credibility finding do not amount to such a showing.

As a second issue, the plaintiff contends that the law judge improperly rejected the opinions of her treating physicians, Dr. Ernest E. Gilmore and Dr. Frank B. Vasey (Doc. 15, pp. 22-25). This contention is meritless.

In July 2008, Dr. Gilmore, the plaintiff's primary care physician, and Dr. Vasey, the plaintiff's rheumatologist, completed forms entitled "Medical Assessment of Ability to Do Work-Related Activities (Physical)" (Tr. 722-27). In his report, Dr. Gilmore indicated that the plaintiff can lift/carry less than one pound, stand/walk less than an hour in an eight-hour workday, and sit for one hour in an eight-hour workday with an ability to sit for only fifteen minutes at a time (Tr. 722-23). Dr. Gilmore further opined that the plaintiff can climb "very little," and she is incapable of performing any other postural activities (Tr. 723). He indicated that the plaintiff should avoid all environmental factors, and the plaintiff is limited with respect to reaching, handling, feeling, pushing/pulling, and seeing (Tr. 724). Similarly, Dr. Vasey reported that the plaintiff can lift/carry less than one pound;

stand/walk less than one hour in an eight-hour workday; sit for one hour in an eight-hour workday but only fifteen minutes at a time; and never perform postural activities (Tr. 725-26). Dr. Vasey also noted that the plaintiff should avoid all environmental factors, and she has restrictions with reaching, handling, and pushing/pulling (Tr. 727).

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. <u>Phillips</u> v. <u>Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. <u>Lewis</u> v. <u>Callahan</u>, 125 F.3d 1436, 1440 (11th Cir. 1997).

In the first place, these opinions are conclusory. They are simply marks on a form without any meaningful explanation.

Furthermore, on their face, they are extreme. Particularly in light of the plaintiff's activities, the opinions, for example, that the plaintiff cannot lift or carry one pound and cannot sit for more than fifteen minutes, seem implausible.

With respect to these doctors and their opinion evidence, the law judge stated (Tr. 570):

> Limited weight is accorded the opinions of Dr. Vasey and Dr. Gilmore. Although they are treating physicians, the physicians treated the claimant for only a very short period of time; their opinions are not supported by their own objective examination findings; and the opinions are contradicted by the observations of the other physicians of record.

The plaintiff first contends that the law judge erred in concluding that Dr. Vasey and Dr. Gilmore treated the plaintiff for "a very short period of time" (Doc. 15, p. 23). Thus, the plaintiff notes that the medical records confirm treatment by these doctors in 2007, and she testified at the hearing that both of these doctors had been treating her for at least a year. However, although both of these doctors acknowledged or co-signed several of the plaintiff's progress notes (see, e.g., Tr. 324, 621-23, 641-43, 671-72), the record seems to indicate that the plaintiff was examined only once by Dr. Vasey and four times by Dr. Gilmore (Tr. 616-19, 633-35, 680-83, 697, 700-01), and the plaintiff has not shown otherwise. Therefore, while the law judge acknowledged Dr. Gilmore and Dr. Vasey as treating physicians, their opinions are not entitled to the same weight ordinarily given to a doctor who

has treated a claimant with some regularity over an extended period and who therefore has a "detailed, longitudinal picture of [the plaintiff's] medical impairments." 20 C.F.R. 404.1527(c)(2), 416.927(c)(2). In fact, since Dr. Vasey saw the plaintiff only once, his opinion is not entitled to the weight normally accorded the opinion of a treating physician. See Milner v. Barnhart, 275 Fed. Appx. 947 (11th Cir. 2008). Further, as the Commissioner persuasively responds, to the extent the plaintiff contends that these doctors had access to all of plaintiff's other VA treatment records, "they would be in no different position than a state agency medical consultant who was supplied with a claimant's medical file for review and rendered a functional assessment" (Doc. 16, p. 14).

Also, contrary to the plaintiff's assertion (Doc. 15, p. 23), the law judge correctly concluded that the July 2008 opinion of Dr. Gilmore was inconsistent with his own findings. As indicated, Dr. Gilmore opined that the plaintiff could lift less than one pound and could walk, stand and sit for no more than one hour per day (Tr. 722-23). However, as the law judge noted, Dr. Gilmore reported "no significant examination findings" in June 2008 (Tr. 566).

Moreover, Dr. Gilmore's opinion appears to be based significantly on the subjective complaints of the plaintiff. For example, in support of his assessment regarding the plaintiff's ability to stand or walk, Dr. Gilmore noted that the plaintiff "[r]equires [a] walker for assistance" (Tr. 723). However, the progress reports authored by Dr. Gilmore make no mention of the plaintiff's use or need of an assistive device. In addition, with regard to the plaintiff's ability to lift or carry, Dr. Gilmore stated that the plaintiff needs to use two hands to hold a cup of coffee (Tr. 722). Again, no mention of this requirement is made in Dr. Gilmore's progress notes.

As the law judge noted, in July 2008, Dr. Vasey reported that the plaintiff "was disabled, probably since 2001, and that she could do no lifting, could walk, stand, and sit for no more than one hour total per day, could not perform any postural activities, could not repetitively reach, handle, push, or pull, and had to avoid all environmental factors" (Tr. 570, 697, 725-27). The issue of whether a claimant is disabled, however, is reserved to the Commissioner under the regulations. 20 C.F.R. 404.1527(d), 416.927(d); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007). That principle seems particularly apt here to permit the law judge

to disregard a conclusory statement of a "disability," and find instead that the plaintiff could perform sedentary work.

The plaintiff argues that Dr. Vasey's assessment is supported by reports of wrist swelling; positive trigger points in occiput, trapezius, thoracic, buttock, forearms, and lower extremities; and a decreased range of motion in the shoulder due to abduction (Doc. 15, p. 24). Significantly, the plaintiff fails to mention that these records also indicate that "the hydroxycholoroquine improved [the plaintiff's] joint swelling slightly" (Tr. 621). Regardless, these findings do not support the extreme degree of functional limitations opined by Dr. Vasey.

In any event, the law judge's explanation is supported by substantial evidence. Thus, the plaintiff's medical records did not reflect disabling functional limitations. Aside from Dr. Gilmore and Dr. Vasey, no other medical source imposed limitations on the plaintiff's functioning greater than those found by the law judge. To the contrary, as the law judge noted, Dr. Nema S. Runyan, also a VA physician, concluded that the plaintiff "is employable, with the restriction that it be in jobs that allow her to be sedentary" (Tr. 349, 570). Dr. Violet A. Stone, a nonexamining reviewing

physician, also found the plaintiff to be capable of performing at least sedentary work (Tr. 420-27).

The law judge's findings are also supported by the opinions of Dr. Melton, who had the opportunity to examine the plaintiff in 2002 and 2008 (Tr. 268-70, 684-96). On October 28, 2002, Dr. Melton noted the plaintiff's diagnosis as "[g]eneralized musculoskeletal symptomatology," but he stated that "[f]rom an orthopedic surgical standpoint [he found] little in the way of objective findings" (Tr. 269). Dr. Melton also reported that the plaintiff could ambulate without an assistive device (id.) Upon his more recent evaluation of the plaintiff, on April 29, 2008, Dr. Melton indicated a diagnosis of low back pain; mild degenerative joint disease, LS spine; old compression fracture, L3; and generalized musculoskeletal symptomatology (Tr. 685). Dr. Melton's examination revealed "no gross neurological deficit and peripheral pulses are intact. There is no obvious muscle atrophy or wasting. No swelling, heat, redness or instability ... about any joints" (id.). Finally, Dr. Melton concluded that the plaintiff could lift or carry up to twenty pounds occasionally and sit/stand/walk a total of eight hours per day (Tr. 691-

92). Thus, Dr. Melton's opinions, as well as the assessments of Dr. Stone and Dr. Runyan, support the law judge's decision.

The plaintiff takes issue with the law judge's reliance on Dr. Melton's opinion (Doc. 15, p. 24). Specifically, the plaintiff contends that: (1) Dr. Melton's report is internally inconsistent; (2) Dr. Melton is an orthopedic doctor; and (3) Dr. Melton's opinion does not support a residual functional capacity of sedentary work.

As indicated, the plaintiff first attacks Dr. Melton's 2008 report as being "internally inconsistent." Thus, the plaintiff notes that page one of the report indicates that the plaintiff "is not currently receiving any prescription medications," but page two states that the plaintiff has provided a list of her current medications (id.; Tr. 684-85). This contention is meritless. This "inconsistency" seemingly had no effect on Dr. Melton's assessment of the plaintiff. If that is the best the plaintiff has to offer in challenging Dr. Melton's report, she should not have bothered.

The plaintiff also argues that the law judge erred in according weight to the opinion of Dr. Melton because he is an orthopedic doctor and "does not have the training or expertise to determine limitations from

fibromyalgia" (Doc. 15, p. 24). While Dr. Melton may not have had Dr. Vasey's expertise in diagnosing fibromyalgia, he would, as an orthopedic surgeon, have the ability to access the functional limitations from all of the plaintiff's impairments, which included a history of lumbar compression fracture, history of reflex sympathetic dystrophy of the right upper extremity, history of carpal tunnel syndrome, osteoarthritis, left shoulder impingement syndrome, and right tarsal tunnel syndrome (Tr. 564). Furthermore, the plaintiff's suggestion that Dr. Melton was somehow not qualified to assess the plaintiff's functional limitations is undercut by the plaintiff's reliance on the opinion from Dr. Gilmore, who is a primary care physician and not even an orthopedic specialist.

In addition, the plaintiff asserts that Dr. Melton may not have had any of the VA records when evaluating the plaintiff (Doc. 15, p. 24). However, Dr. Melton performed his own examination of the plaintiff, which included x-rays of the plaintiff's spine (Tr. 684-85).

Finally, the plaintiff argues that Dr. Melton's opinion is more consistent with light work and does not provide support for the law judge's residual functional capacity of sedentary work (Doc. 15, p. 24). However, the

regulations provide, "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. 404.1567(b), 416.967(b).   Thus, a fortiori, Dr. Melton's opinion supports the law judge's finding that the plaintiff can perform sedentary work with a sit/stand option and other limitations.

For these reasons, the plaintiff's challenge to Dr. Melton's opinion is unpersuasive. Furthermore, the law judge did not base his opinion entirely on Dr. Melton's reports.

In sum, the law judge set forth good cause for discounting the conclusory opinions of Dr. Vasey and Dr. Gilmore. Morever, the Appeals Council expressly agreed with that determination (Tr. 547). Consequently, this argument does not warrant reversal.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this ⟶ day of June,

2012.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE